IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS SILLER | ) | CASE NO. 1:04 CV 2415 |
| | ) | |
| Petitioner, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| DAVID BOBBY, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Respondent. | ) | **ORDER** |

## I.  Introduction

Before the Court[1] is the petition of Thomas Siller for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254.[2]  Siller is currently incarcerated at the Trumbull Correctional Institution

serving a term of thirty years to life after being convicted at a jury trial of aggravated

murder.[3]

Siller asserts in his single ground for habeas relief that he was denied his Sixth

Amendment right of confrontation when a statement given to police by Walter Zimmer, a

co-defendant who was tried separately, was read to the jury over Siller's objection.[4]  Siller

contends that the admission of this statement at his 2001 trial was contrary to the rule

subsequently pronounced in 2004 by the United States Supreme Court in *Crawford v.*

---

[1] The parties have consented to the exercise of jurisdiction by the Magistrate Judge. ECF # 37.

[2] ECF # 1.

[3] *Id* at 1.

[4] *Id.* at 4(a).

*Washington.*[5]   He argues that because *Crawford* set forth a "new rule" concerning admissibility of out-of-court testimonial statements, it should be retroactively applied to his case.[6]

In response, the state initially maintains that the Ohio appellate court's decision denying Siller's related claim in his direct appeal – which denial was based on Ohio rules of evidence, not on federal constitutional analysis – was, nevertheless, not contrary to the clearly established federal law at the time.  The Oho decision held that use of Zimmer's statement was proper to show that Zimmer, a co-conspirator, had acted in concert with Siller in formulating mutually reinforcing alibis, and was not admitted to prove what Siller may specifically have done to the victim on the date in question.[7]

In addition, the state now contends that should this Court find error in the admission of this statement at trial, it should also find that any error was harmless because there was other sufficient evidence to support a finding of guilt against Siller.[8]   Moreover, the state maintains that *Crawford* should not be given retroactive effect.[9]

---

[5] *Crawford v. Washington*, 541 U.S. 36 (2004).

[6] ECF # 33 at 4.

[7] ECF # 11 at 28.

[8] *Id.* at 29.

[9] *Id.* at 20-23.

For the reasons that follow, the Court initially finds that, in light of the Supreme Court's recent decision in *Whorton v. Bockting*,[10] *Crawford* is not retroactive and so does not apply to Siller's claim.  The Court further finds that the decision of the state appellate court upholding the use of Zimmer's out-of-court statement pursuant to the hearsay exception in Ohio Evidence Rule 801(D)(2)(e) was not contrary to clearly established federal law applicable at the time.

Accordingly, the Court ultimately finds Siller's petition to be without merit and so denies it.

## II.  Facts

### A.    State trial

The salient facts are somewhat complex and extensive but are not in dispute.  Siller was indicted in May, 2000 for the aggravated murder of Lucy Zolkowski.[11]  Siller had previously been convicted of various crimes arising out of the 1997 severe beating and robbery of Zolkowski, a 74 year old woman who had previously, over time, lent Siller a large sum of money and for whom Siller had performed various odd jobs.[12]  He was serving a

---

[10] *Whorton v. Bockting*, __ U.S. __, 127 S. Ct. 1173 (2007).

[11] ECF # 11, Ex. 3 (Indictment).  The victim is referred to as "Lucy" in both the indictment and the opinion of the Ohio appellate court.  *See*, ECF # 11, Exs. 1, 12.  However, she is called "Alice" in the police statement taken from co-defendant Zimmer.  ECF # 23, Ex. 30 (transcript vol. 11 at pp. 2558-2563).  She will be referred to as Lucy throughout this Opinion.

[12] *See*, *State v. Siller*, No. 75139, 1999 WL 980405, at *1 (Oct. 28, 1999, Ohio App. 8 Dist.) (appeal from robbery and assault trial) (*Siller I*); *see also*, *State v. Siller*, No. 80219, 2003 WL 1894573, at *1 (April 17, 2003, Ohio App. 8 Dist.) (appeal from aggravated

-3-

sentence of twenty years on those convictions[13] when she died of her injuries and the aggravated murder charge was filed.[14]

Siller, Zimmer, and Jason Smith, a sometime drug dealer, had been using crack cocaine during the evening of June 3, 1997.[15]  After using up an initial quantity of crack that they had purchased as the result of a loan from Zolkowski, the group desired more crack and, at 11:30 p.m., returned to Zolkowski's house to obtain more money.[16]

While Smith waited in the car, Siller and Zimmer went into Zolkowski's home to get the money.  When they had not emerged from the house after thirty to forty minutes, Smith went inside and found Siller rummaging through the drawers in Zolkowski's bedroom while Zimmer was standing over a bloodied Lucy Zolkowski, who was bound to a chair in another room.  Smith, who upon entering the house had initially taken some of Zolkowski's blank personal checks, then became afraid and put the checks back on the dining room table as he left the house.[17]

---

murder trial) (*Siller II*).

[13] *See*, ECF # 33 at 3.

[14]  *Siller II*, 2003 WL 1894573, at *1.

[15] *Id.*, at *2.

[16] *Id.*

[17] *Id.*

At 3:49 a.m., Siller made an anonymous 9-1-1 call from a payphone near a stretch of bars in Zolkowski's neighborhood.[18]  He told the 9-1-1 operator that a friend had told him that a woman had been beaten in her home and gave Zolkowski's address.[19]

When police arrived at that location, they found that the house had been ransacked and Lucy had been severely beaten, gagged and tied to a chair.[20]  She was unable to communicate with the police or paramedics.[21]  However, police did find one of Siller's fingerprints on an ashtray in Zolkowski's living room, one of Zimmer's fingerprints on a glass block window in Zolkowski's kitchen and a print from Jason Smith in the bedroom.[22]

On June 6, 1997, three days after the crime was discovered, Siller, Zimmer, and their friend Rose Crowder each voluntarily gave written statements to Cleveland police.[23]  Zimmer's statement – which is at issue here – relates that he and Siller were at Rose Crowder's home from about 7 p.m. until midnight, when they decided to go to a neighborhood bar.[24]  Zimmer's statement further relates that as he was leaving the bar around

----

[18] *Id.*, at *1.

[19] *Id.*

[20] *Id.*

[21] *Id.*; *see also Siller I*, 1999 WL 980405, at *1, for a more extensive description of Lucy Zolkowski's injuries and her condition when she was found by police.

[22] *Siller I*, 1999 WL 980405, at *1, *Siller II*, 2003 WL 1894573, at *1.

[23] *State v. Zimmer*, No. 75138, 1999 WL 980406, at *1 (Ohio App. 8 Dist.).  The record in this case was made a part of the record in Siller's murder trial.  *See*, ECF # 11, Ex. 7 (Siller's state appellate brief) at 2.

[24] *Zimmer*, 1999 WL 980406, at *1.

-5-

1:30 or 2:00 a.m., he walked past Lucy Zolkowski's home, which was in the neighborhood, noticed that lights were on and, when Lucy did not answer the front door, went around to the back screen door where he saw Lucy inside.[25]  The door being open, Zimmer stated that he went inside, found that Lucy had been beaten and asked her who did it, suggesting several names, including Siller's.[26]  Zolkowski did not answer.[27]

Zimmer then told police that the reason he did not himself call 9-1-1 with the information about Zolkowski was because there was an outstanding warrant out for his arrest for driving under a suspended license.[28]  Instead, he stated that he went to Crowder's home just down the street from Zolkowski's where he told Crowder about Lucy.[29]  According to Zimmer's statement, Crowder then paged Siller at the bar to have him come to her house so he could be told about Lucy and alert the authorities.[30]

Siller's statement, given to police separately but on the same day as Zimmer's, also contains the story that he was paged at the bar by Crowder to come to her house, where he then learned what happened to Zolkowski.[31]  He further stated that they didn't call 9-1-1 from

---

[25] *Id.*

[26] *Id.; see also*, *Siller II*, 2003 WL 1894573, at *4.

[27] *Siller II*, 2003 WL 1894573, at *4.

[28] *Zimmer*, 1999 WL 980406, at *2.

[29] *Id.*

[30] *Id.*

[31] *Siller II*, 2003 WL 1894573, at *1.

Crowder's house because Crowder was hysterical.[32]  Consequently, Siller told police that he

left Crowder's residence, drove Zimmer home and then called 9-1-1 from a payphone.[33]

Crowder also gave police a statement saying that Zimmer and Siller were at her home

until about 11:00 p.m. that night when they went to the bar.[34]  She stated that no one called

9-1-1 from her home because both Zimmer and Siller were afraid, since each had outstanding

warrants.[35]

The evidence against Siller at his murder trial was largely from three sources:

(1) forensic evidence, such as Siller's fingerprint on the ashtray found inside Lucy

Zolkowski's home; (2) Jason Smith, who was present at Zolkowski's house that night and

testified against Siller in return for consideration in his own criminal case arising out of this

offense; and (3) Thomas Campbell, a fellow inmate of Siller's, whose testimony against

Siller prompted favorable consideration by the prosecutor in his sentencing in an unrelated

matter.[36]

In his defense, Siller presented testimony from: (1) Rose Crowder, who, consistent

with her earlier statement to police, testified that Zimmer had first come to her home with

information on what happened to Lucy Zolkowski, with Siller learning of the assault upon

---

[32] *Zimmer*, 1999 WL 980406, at *2.

[33] *Siller II*, 2003 WL 1894573, at *1.

[34] *Zimmer*, 1999 WL 980406, at *2.

[35] *Id.*  She testified at Siller's murder trial that the reason for not calling from her home was because she had drugs in the house. *See*, *Siller II*, 2003 WL 1894573, at *2.

[36] *Siller II*, 2003 WL 1894573, at *2.

arriving there later and only after being paged at a bar by Crowder; (2) two fellow inmates

of Smith, who testified that Smith had boasted of evading responsibility for Lucy

Zolkowski's death by framing Siller; and (3) other fellow inmates of Siller's who testified

that Siller had repeatedly denied beating and robbing the victim.[37]

With respect to Zimmer's statement to police, the state argued at Siller's murder trial

that, read together, the statements of both Zimmer and Siller reflected a conspiracy to conceal

their true involvement in the crime by having each validate the alibi of the other.[38]  The

defense objected to the introduction of Zimmer's statement.  It contended that a portion of

that statement – where Zimmer told police that he specifically asked Lucy Zolkowski

whether she had been assaulted by three possible assailants, including Siller – was prejudicial

to Siller.[39]

Although the statement was not itself admitted into evidence, the state trial court

permitted the detective who took the statement to read it to the jury and the prosecutor

referred to the statement in closing arguments.[40]

---

[37] *Id.*

[38] *See*, ECF # 23 (Vol. 11, trial transcript) (manually filed) at 2547.  "[T]he State is not going to be introducing this statement to prove the truth of the matters asserted.  We don't think they are true and reliable at all, but they were actually made as part of their efforts to cover up their criminal conduct."  *See also*, ECF # 11, Ex. 7 (Siller's state appellate brief) at 12, Ex. 8 (state's brief on appeal) at 13.

[39] *See*, ECF # 23 at 2543-44. *See also*, ECF # 11, Ex. 7 at 13.

[40] *Siller II*, 2003 WL 1894573, at *4; *see also*, ECF # 11, Ex. 7 at 12, ECF # 27 (Trial transcript vol. 15) (manually filed) at 3538-39. "[R]ecall their statements.  And what you find is that in some respects they took some time before going in to Detective Carlin to square up their statements, and in some respects, where they obviously didn't anticipate what she was

Siller was convicted by the jury as being principally responsible for Lucy Zolkowski's death.  He was subsequently sentenced to a term of thirty years to life for the crime.[41]

**B.      State appeals**

Through new counsel, Siller thereupon appealed this conviction to the Ohio Court of Appeals, raising eleven assignments of error:

1.       [Siller] was deprived of due process under the Fourteenth Amendment when the jury failed to make a unanimous finding of guilt of the aggravated murder count and felony murder specification as required by *Schad v. Arizona* and its progeny.

2.       [Siller's] right to due process under the Fourteenth and Fifth Amendments of the U.S. Constitution was violated when the state obtained an indictment and a conviction with inconsistent theories/ evidence of who was the principal offender on the underlying charge.

3.       The use of the statement of co-defendant Walter Zimmer violated the Confrontation Clause under the Sixth and Fourteenth Amendments of the U.S. Constitution and Art. 1, Sec. 10 of the Ohio Constitution.

4.       Prosecutorial misconduct denied [Siller] a fair trial and violated the Fourteenth Amendment of the U.S. Constitution.

5.       The jury's note taking and posing questions during trial violated the Sixth and Fourteenth Amendments of the U.S. Constitution.

6.       The trial court erred in denying [Siller's] motion to suppress his statement in violation of the Fifth and Fourteenth Amendments.

7.       The trial court improperly restricted the scope of cross examination of Thomas Campbell in violation of the Ohio Rules of Evidence and the Due Process Clause of the Fourteenth Amendment.

---

going to ask, specifically about alibi, they didn't, and they made mistakes."

[41] *Siller II*, 2003 WL 1894573, at *4.

8.      The verdict finding that [Siller] is the principal offender is against the weight of the evidence.

9.      The court's erroneous jury instructions and defective jury verdict forms deprived [Siller] of due process under the Fourteenth Amendment of the U.S. Constitution.

10.     A new trial must be ordered due to trial counsel's ineffectiveness under the Sixth and Fourteenth Amendments of the U.S. Constitution and the plain error doctrine.

11.     The cumulative effect of the errors in trial denied [Siller] a fair trial under the Fourteenth Amendment of the U.S. Constitution.[42]

The state responded,[43] and the Ohio appellate court then rejected each of Siller's purported assignments of error, affirming his conviction.[44]

Siller, proceeding through the same counsel as had represented him before the Ohio court of appeals, thereupon sought review by the Ohio Supreme Court, positing six propositions of law:

1.      The right to Due Process under the Fourteenth Amendment of the U.S. Constitution is violated when the jury fails to make a unanimous finding of guilt of the aggravated murder count and the felony murder specification as required by *Schad v. Arizona* and its progeny.

2.      [Siller's] right to Due Process under the Fourteenth and Fifth Amendments of the U.S. Constitution was violated when the state

---

[42] ECF # 11, Ex. 7.

[43] ECF # 11, Ex. 8.

[44] ECF # 11, Ex. 12.  (Note that the ECF exhibit number for this document is not identical to the exhibit number provided by the state when filing its return of the writ.  This is one reason the Magistrate Judge's initial order, ECF # 5, requires that the state record be filed as consecutively numbered pages.)  The state appellate court decision is also found at *Siller II*, 2003 WL 1894573.

obtained an indictment and a conviction with inconsistent theories/ evidence of who was the principal offender on the underlying charge.

3.    The use of the non-testifying co-defendant's statement violated the confrontation clause of the Sixth and Fourteenth Amendments of the U.S. Constitution.

4.    Prosecutorial misconduct violates the Due Process clause of Fourteenth Amendment when he fails to disclose a taped statement of [Siller's] until after the trial commences and violates Due Process when he seeks and obtains a capital indictment without evidence to support it.

5.    The court's erroneous jury instructions and defective verdict forms deprived [Siller] of Due Process under the Fourteenth Amendment of the U.S. Constitution.

6.    Counsel was ineffective under the Sixth and Fourteenth Amendments of the U.S. Constitution when he failed to raise meritorious issues.[45]

The state filed a response in opposition.[46]  The Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.[47]

Siller did not petition the United States Supreme Court for a writ of certiorari.[48]

---

[45] ECF # 11, Ex. 14.

[46] ECF # 11, Ex. 15.

[47] ECF # 11, Ex. 16.

[48] Siller, *pro se*, filed a post-conviction motion with the state trial court seeking a DNA comparison test.  According to his federal habeas petition, that motion was denied and a subsequent request for findings of fact and conclusions of law was still pending in state court at the time this federal habeas action was commenced.  *See*, ECF # 1 at 2-3. Since this state post-conviction motion is not asserted to involve any federal constitutional claims made by the present habeas petition, to the extent it is still pending, it has no bearing on the current matter before this Court.

-11-

## C.    Federal habeas proceeding

Now acting through different counsel, Siller filed the present petition for habeas relief, asserting the single claim that his "conviction [was] obtained in violation of [the] Sixth Amendment right of confrontation."[49]  Siller contends in his traverse that while *Crawford* was decided after the Ohio appeals court rendered its decision in this case, it should be retroactively applied.[50]  Siller asserts that retroactive application of the rule in *Crawford* would compel a new trial because, without the Zimmer statement, the state's evidence against him "was primarily the testimony of snitches who benefitted greatly from the[ir] cooperation with the State"[51] and is, thus, unreliable.

The state, in its return of the writ, argues that *Crawford* should not be retroactively applied since that is the position adopted by most federal circuits that have ruled on the issue.[52] Moreover, it maintains that admitting Zimmer's statement for a limited purpose was proper inasmuch as it showed that both Zimmer and Siller attempted to conceal their involvement in the crime by making similar statements to police in "an effort to lead the police to believe that [they] were just cooperating general witnesses, not prime suspects."[53] In addition, it

---

[49] ECF # 1 at 4.

[50] ECF # 33 at 6-11.

[51] *Id.* at 3.

[52] ECF # 11 at 20.

[53] *Id.* at 24.

contends that the trial testimony of Jason Smith – which was discounted by Siller as simply that of a "snitch" – was actually that of the only person, other than Zimmer and Siller, "who was at the scene of the crimes and witnessed the crimes."[54] Therefore, a verdict relying on the jury's belief in Smith's account, after being informed of his deal with prosecutors, is reliable.[55]

## III.  Analysis

### A.  The Supreme Court has recently decided that *Crawford* is not retroactive and so Siller's invocation of *Crawford* is unavailing.

As noted, a unanimous Supreme Court recently held in *Bockting* that although *Crawford* did announce a "new rule" of criminal procedure concerning testimonial hearsay, the new rule was not a "watershed" rule within the meaning of *Teague v. Lane*[56] and so would not be retroactively applied.[57]  Consequently, Siller's attempt here to obtain federal habeas review of his 2001 conviction under a rule announced in 2004 by *Crawford* must necessarily be ineffectual.

---

[54] *Id.*  The statement is in the only footnote on this page.  It is denominated "13-18," which is not part of the footnote sequence of the document.

[55] *Id.* at 29.

[56] *Teague v. Lane*, 489 U.S. 288, 311 (1989).

[57] *Bockting*, 127 S. Ct. at 1184.  This holding is consistent with the pre-*Bockting* rule in the Sixth Circuit which also held, under a similar understanding of *Teague*, that *Crawford* should not be given retroactive application.  *See*, *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005).

**B.  The state appeals court decision affirming the use at Siller's trial of Zimmer's out-of-court statement to police was not contrary to the clearly established federal law at that time of *Ohio v. Roberts*[58] and *Idaho v. Wright*.[59]**

***1.    Standard of review/state decision not based on federal constitutional analysis***

By statute and under the oft-cited rubric of *Williams v. Taylor*,[60] when, as here, a habeas petition is brought under the AEDPA,[61] a federal habeas court may not grant the writ unless the adjudication of the claim by the state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.[62]

In addition, where the state court did not apply a federal constitutional analysis but adjudicated the matter purely as one of state law, the claim must be reviewed by the federal habeas court under the "contrary to" prong of *Williams*.[63]  The phrase "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed."[64]

---

[58] *Ohio v. Roberts*, 448 U.S. 56 (1980).

[59] *Idaho v. Wright*, 497 U.S. 805 (1990).

[60] *Williams v. Taylor*, 529 U.S. 362 (2000).

[61] Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254.

[62] 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 405-08.

[63] *See*, *Alley v. Bell*, 307 F.3d 380, 397-98 (6th Cir. 2002).

[64] *Williams*, 529 U.S. at 405.

-14-

## 2.    *Standard of review/ testimonial hearsay of an Ohio co-conspirator when statements were made in concealment phase of the crime.*

As the Sixth Circuit noted in *Anthony v. DeWitt*,[65] Ohio law, in the form of Rule 801(D)(2)(e) of the Ohio Rules of Evidence, permits the use of out-of-court statements by co-conspirators made during the concealment of a crime.[66] As such, Ohio differs from the traditional formulation of the co-conspirator hearsay exception, which does not include statements made during the concealment phase of a crime.[67]

Because, then, Ohio's rule is not a firmly rooted hearsay exception, an out-of-court statement by a co-conspirator in furtherance of a concealment may be admitted pursuant to that rule only upon a "showing of particularized guarantees of trustworthiness."[68]  Such "particularized guarantees" are determined based on "the totality of the circumstances, restricted to those that surround the making of the statement and render the declarant particularly worthy of belief."[69]  The guarantees must "be inherent in the circumstances surrounding the testimony itself; it is insufficient that other evidence corroborates it."[70]

---

[65] *Anthony v. DeWitt*, 295 F.3d 554 (6th Cir. 2002).

[66] *Id.* at 562, citing *State v. Shelton*, 51 Ohio St. 2d 68, syllabus ¶ 2 (1977).

[67] *Id.*, citing *Dutton v. Evans*, 400 U.S. 74, 81 (1970).

[68] *Id.*, quoting *Roberts*, 448 U.S. at 65.  *Accord*, *United States v. Tocco*, 200 F.3d 401, 416 (6th Cir. 2000) (Out-of-court statements that do not fit within a firmly rooted hearsay exception do not violate the Confrontation Clause if they possess particularized guarantees of trustworthiness) (quoting *Lilly v. Virginia*, 527 U.S. 116, 126 (1999)).

[69] *Id.*, quoting *Wright*, 497 U.S. at 816.  *Accord*, *Bugh v. Mitchell*, 329 F.3d 496, 510 (6th Cir. 2003).

[70] *Id.* at 563, citing *Tocco*, 200 F.3d at 416.

The Sixth Circuit in *Anthony* noted that in *Dutton* the Supreme Court identified four factors which inher in the circumstances surrounding the statement and are "widely viewed as determinative" as to whether an out-of-court statement may be placed before a jury: (1) whether the hearsay statement contained an express assertion of past fact, (2) whether the declarant had personal knowledge of the fact asserted, (3) whether the possibility that the statement was based upon a faulty recollection is remote in the extreme, and (4) whether the circumstances surrounding the statement make it unlikely the defendant fabricated the assertion of fact.[71]

### 3.  *The state appellate decision here was not contrary to this clearly established federal law.*

Here, use of Zimmer's statement was not permitted for purposes of proving the truth of what he said.  Rather, it was permitted to show that Zimmer and Siller had concocted mutually reinforcing alibis for the purpose of deflecting police attention from them as suspects.

Toward that limited end, Zimmer's statement meets the four-part *Dutton* test for inherent marks of reliability.  First, there is the express assertion of the past fact that Zimmer and Siller were together the night that Lucy Zolkowski was robbed and beaten.  Second, Zimmer had personal knowledge of that fact.  Third, since the statement was voluntarily given to police just three days after the crime and simultaneous with Siller's own voluntary

---

[71] *Id.*, citing *Dutton*, 400 U.S. at 88-89.

statement, it is not likely that Zimmer would have a faulty recollection of the story he and Siller had only recently agreed to tell.

Finally, the circumstances surrounding the statement make it very unlikely that Zimmer would have changed or deviated from the story he had agreed with Siller to tell. Mutual telling of that story was the only way, in their minds, that each of them was going to avoid being the subject of a serious criminal investigation.  Thus, Zimmer had very serious reasons not to change it.

Essentially, there was every reason to believe that Zimmer was giving police the precise explanation of his whereabouts that he had only recently agreed with Siller to give so that both of them could provide an alibi for the other and evade responsibility for what became the murder of Lucy Zolkowski.

Thus, under the clearly established federal law at that time, the state appeals court did not act contrary to that law when it affirmed the use of Zimmer's out-of-court statement as having "particularized guarantees of trustworthiness"– only as to the alibi he and Siller agreed to present –  under Ohio's version of the co-conspirator exception to the hearsay rule. Siller's argument to the contrary is not persuasive, and his claim for habeas relief is, therefore, without merit.

**C.      Even if the state court decision was contrary to clearly established federal law, the error was harmless.**

*1.      Standard of review/ harmless error*

Unless a constitutional error has a "substantial and injurious effect or influence in determining the jury's verdict," it should be considered harmless for purposes of federal habeas review.[72]  It is a matter for the federal habeas judge to decide whether the error had a "substantial and injurious effect or influence" on the jury's verdict.[73]

In making that decision, if it is determined that the error had no or only slight influence or effect, the verdict and judgment must not be disturbed.[74]  If, however, the habeas judge has grave doubt as to whether the error had a substantial and injurious effect or influence on the trial jury, the error must be treated as if it did have such an effect.[75]  In addition, a habeas petitioner may not obtain the writ "based on a trial error unless they can establish that [the error] resulted in 'actual prejudice.'"[76]

---

[72] *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  *Brecht* remains the standard for harmless error even after the passage of the AEDPA.  *See*, *Hill v. Hofbauer*, 337 F.3d 706, 718 (6th Cir. 2003).  However, certain errors implicating fundamental constitutional processes may occur at trial and require reversal of the conviction without resorting to the harmless error analysis.  *Brecht*, 507 U.S. at 638, n.9.

[73] *O'Neal v. McAninch*, 513 U.S. 432, 435-38 (1995).

[74] *Id.*

[75] *Id.*

[76] *McGhee v. Yukins*, 229 F.3d 506, 512 (6th Cir. 2000) (quoting *Brecht*, 507 U.S. at 637).

-18-

Questions as to the allegedly erroneous admission of testimonial hearsay at trial are subject to the foregoing *Brecht* harmless error analysis on habeas review.[77]

**2.      Even if the admission at Siller's trial of Zimmer's statement to police was constitutional error, it was harmless.**

Even if the use at trial of Zimmer's out-of-court statement to Cleveland police for the purpose of showing how Zimmer and Siller had coordinated the details of their alibis was constitutionally improper, the error was harmless because it did not have a substantial and injurious effect on the jury's verdict.

The state's case against Siller relied heavily on the testimony of Jason Smith, who, unlike Siller's defense witnesses, was actually present at Lucy Zolkowski's beating, and Thomas Campbell, who testified that Siller had admitted his involvement.  Notwithstanding Siller's current attack on their credibility by labeling them as "snitches," it is manifestly the province of the jury to decide questions of credibility.[78] Quite apart from the Zimmer statement, there was ample evidence here, that the jury could reasonably choose to believe, of Siller's guilt.

Moreover, despite Siller's claim that Zimmer's statement was prejudicial, the statement itself does not directly inculpate Siller.  In fact, understood as a complete statement, it is, as the state contends, a mutually reinforcing alibi for both Siller and Zimmer. For a jury to believe that Zimmer's listing of names of potential assailants, including Siller's, to a beaten Lucy Zolkowski – who never responded – was somehow Zimmer incriminating

---

[77] *Anthony*, 295 F.3d at 562.

[78] *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).

-19-

Siller, would require the jury to ignore another part of Zimmer's statement where he details how – at the time Lucy Zolkowski was attacked – he was with Siller at Rose Crowder's that evening from 7:00 p.m. until midnight, then going with Siller to a bar until Siller drove him home.[79]

This explanation by Zimmer of Siller's whereabouts at the time of the crime is internally inconsistent with Siller being at Lucy Zolkowski's home at the same time. It is also thus incompatible with Siller's claim that he was prejudiced by that small part of Zimmer's statement where he proffers various names to the beaten Lucy Zolkowski as her assailant.

Therefore, given that it is plain in the total statement itself that Zimmer cannot be claiming both that Siller was with him when Lucy was attacked and also that Siller was Lucy's attacker, the Court finds that there is little or no chance that the jury could take Zimmer's complete statement to be a claim by Zimmer that Siller attacked Lucy Zolkowski. Without a credible basis for believing such a claim was before the jury, there is no possibility that Siller was prejudiced by the statement.

Accordingly, given the direct testimony against Siller already mentioned, there is virtually no chance that the use of Zimmer's statement had a substantial and injurious effect or influence on the jury's verdict. Siller's argument to the contrary is, therefore, rejected.

---

[79] Zimmer's complete statement is at ECF # 23, trial transcript at 2562-63. The prosecutor's comparison during closing arument of how the statements of Siller and Zimmer are inconsistent on key details of the crime is at ECF # 23, trial transcript at 3539-44.

## IV.   Conclusion

Therefore, the Court finds, as noted: (1) that the rule in *Crawford* is not retroactive and so is not available to Siller in this case, (2) the decision of the state appeals court affirming the use at trial of Walter Zimmer's statement was not contrary to clearly established federal law, and (3) even if the use of that statement was in error, the error was harmless under the test set forth in *Brecht*.

Consequently, Thomas Siller's petition for a writ of habeas corpus is denied.

IT IS SO ORDERED.

Dated:   March 23, 2007                                 s/ William H. Baughman, Jr.
                                                        United States Magistrate Judge